**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| COURTHOUSE NEWS SERVICE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LOREN JACKSON, in his official capacity | ) | Civil Action No. _____ |
| as Harris County District Clerk, and WES | ) | |
| MCCOY in his official capacity as Chief | ) | |
| Deputy – Services for the Harris County | ) | |
| District Clerk's Office, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ORIGINAL COMPLAINT AND REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTIVE AND DECLARATORY RELIEF

COMES NOW Plaintiff Courthouse News Service ("Courthouse News"), by and through its undersigned attorneys, and for its Original Complaint and Request for Preliminary and Permanent Injunctive and Declaratory Relief, would show the Court as follows:

### I.     INTRODUCTION

1.     Plaintiff Courthouse News brings this action seeking injunctive and declaratory relief against the above-named defendants, in their official capacities (collectively, the "Defendants"), to restrain the deprivation under color of state law of Courthouse News' rights, privileges, and immunities under 42 U.S.C. § 1983 *et seq.*, the United States Constitution, federal and Texas common law, the Texas Constitution, and Texas statutory law.

2.     Courthouse News, a widely read legal news wire service with thousands of subscribers across the nation, seeks timely access to new civil court case-initiating documents filed with the Harris County District Clerk's Office, the statutory custodian of court documents

filed in the civil district courts of Harris County, Texas.  Until October 2008, Courthouse News enjoyed same-day access to virtually all new civil petitions for almost 10 years in Harris County; however, beginning in October 2008 and continuing until this day, Defendants have implemented various changes in access that have resulted in Courthouse News only being given same-day access to a small fraction of new petitions.  As of the date of this filing, Courthouse News is being given access on the same day of filing to less than 5-10% of all newly filed petitions. Defendants have indicated they are in the process of implementing a new system of electronic scanning of new court filings, but instead of this new procedure expediting access to court filings, the opposite is true.  Under the changes implemented by Defendants, Courthouse News must wait anywhere from two to five days to access the vast majority of new petitions through a section of the District Clerk's web site known as "eDocs," the District Clerk's own publishing arm and a source of revenue for the Clerk's Office.

3.      By denying Courthouse News timely access to public court records, these records are as good as sealed for an appreciable period of time after filing.  Moreover, Defendants have elevated themselves above the news media to a favored position with respect to publication of public court records, which relegates Courthouse News and other members of the media to an inherently inferior position, all in violation of rights secured to Courthouse News by the First and Fourteenth Amendments to the U.S. Constitution, federal and Texas common law, the Texas Constitution, and Texas statutory law.  Accordingly, Courthouse News reasonably and in good faith believes that it is threatened with imminent harm to its constitutional, common law, and statutory rights, and that without immediate injunctive relief, Courthouse News will suffer irreparable injury.

## II.   <u>JURISDICTION AND VENUE</u>

4.      Courthouse News' claims arise, in part, under the First and Fourteenth Amendments to the United States Constitution, the federal common law, and the Civil Rights Act, 42 U.S.C. § 1983 *et seq*.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question).  Jurisdiction for declaratory relief is proper under 28 U.S.C. § 2201.  The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the state law claims brought pursuant to Article 1, Section 8 of the Texas Constitution, Rule 76a of the Texas Rules of Civil Procedure, and Texas common law.  Defendants are subject to personal jurisdiction in this judicial district at the time this action is commenced.

5.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because, on information and belief, all of the Defendants reside in Texas, and at least one Defendant resides in this district, and because a substantial part of the events or omissions giving rise to Courthouse News' claims occurred in this district.  Venue is proper in this division because, on information and belief, all of the Defendants reside in this division, and Courthouse News' claims for relief arose in this division.

## III.   <u>PARTIES</u>

6.      Courthouse News, a California corporation with its principal place of business located in Pasadena, California, is a nineteen-year-old nationwide legal news service for lawyers and the news media.  It is similar to other news wire services, such as the Associated Press, except that Courthouse News focuses on civil lawsuits, from the date of filing through the appellate level.  The majority of Courthouse News' nearly 2,500 subscribers nationwide are lawyers and law firms, including more than 100 in Houston alone.  Courthouse News' subscribers also include several other media entities (*The Dallas Morning News* is one such

subscriber), all of whom depend on Courthouse News for timely information about new civil court cases.

7.      Defendant Loren Jackson is the elected Harris County District Clerk and manages the Harris County District Clerk's Office, and is sued in that official capacity.   The District Clerk's Office is responsible for custodial care and safekeeping of all court records for the district courts and criminal courts located in Harris County. The District Clerk is responsible for establishing the policies and practices of the District Clerk's Office to fulfill its obligations under applicable law.  On information and belief, Defendant Jackson resides in Harris County, Texas, and his primary office is located within Harris County, Texas.  Absent an executed waiver of service, Defendant Jackson may be served with process and summons at the principal place of business for the Harris County District Clerk, located at 201 Caroline, Suite 420, Houston, Harris County, Texas 77002, or wherever else he may be found.

8.      Defendant Wes McCoy is the appointed Chief Deputy–Services of the Harris County District Clerk's Office, and is sued in that official capacity.  The Chief Deputy assists the District Clerk in establishing the policies and practices of the District Clerk's Office.   On information and belief, Defendant McCoy resides in Harris County, Texas, and his primary office is located within Harris County, Texas.  Absent an executed waiver of service, Defendant McCoy may be served with process and summons at the principal place of business for the Harris County District Clerk, located at 201 Caroline, Suite 420, Houston, Harris County, Texas 77002, or wherever else he may be found.

9.      Each of the Defendants, and those subject to their supervision, direction, and control, are directly involved with and/or responsible for the continuing denial of timely access to newly filed court records experienced by Courthouse News, which acts reflect the official policy

of the Harris County District Clerk's Office and Harris County, Texas. Defendants' actions, as alleged in this Complaint, are under color of Texas law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

10.     Each Defendant is sued in his official capacity only. Courthouse News seeks relief against each Defendant as well as their agents, assistants, successors, employees, and all persons acting in concert or cooperation with them or at their direction or under their control.

## IV.     FACTS COMMON TO ALL COUNTS

### A.     News Reporting Activities Of Courthouse News

11.     Courthouse News' core news publications are its new litigation reports, which are e-mailed to subscribers daily and contain news coverage of all significant new civil complaints filed in a particular jurisdiction. For its Texas subscribers, Courthouse News publishes a "Houston State" report, which provides daily coverage of new civil complaints filed in the Harris County District Court, and a "Houston Federal" report, which provides daily live reports on new civil complaints filed in this Court. Additional reports provide coverage of other state and federal courts throughout Texas, including courts in Dallas, Austin, San Antonio, Beaumont, and Fort Worth. Courthouse News also offers news alerts, which are delivered via e-mail to subscribers throughout the day. In addition, Courthouse News publishes four print publications: *Entertainment Law Digest*; *Environmental Law Report*, *Securities Law Report*, and *Central District Almanac*. Its web site, www.courthousenews.com, also features news reports and commentary about civil cases and appeals.

12.     In recognition of the crucial role played by the media to inform interested persons about new court cases, it has been a longstanding tradition for courts to provide reporters who visit the court every day with access to new complaints at the end of the day on which they are

filed.  This same-day access ensures that interested members of the public can learn about new cases while they are still newsworthy.  Timely access is even more important in today's digital age.  With information being exchanged across the Internet at lightening speed, old news is not news at all; it is history.

**B.**       **Prior Access At The Harris County District Clerk's Office**

13.      Courthouse News Service has been visiting the Harris County Civil District Courts on a daily basis since May 1999.  While the specific procedures its reporters use to review new civil petitions have changed slightly over the years, the key elements have remained the same: reporters were permitted to review most new civil petitions in their original, paper form on the same day they were filed, regardless of whether those petitions had been fully processed, scanned, or posted online.  Although Courthouse News' reporters have traditionally conducted their review behind the intake counter of the District Clerk's Office (a procedure followed in numerous other jurisdictions to this day), such behind-the-counter access is not an essential element of this basic review process.

14.      Courthouse News' current Harris County reporter is Cameron Langford.  Up until October 2008, the procedures he used to review new civil petitions were as follows: prior to each visit, he examined docket information on the new petitions by using the Clerk's online JIMS system to determine which new petitions were likely to be newsworthy.  Mr. Langford would then collect newly-filed petitions from the cashier and review them in an empty cubicle behind the intake counter.  If any petitions had been transferred to intake clerks for processing before Mr. Langford had an opportunity to review them, the cashiers would assist Mr. Langford in locating those petitions.  To minimize any disruption of the clerks' time, Mr. Langford either quickly took notes on each petition or, if needed, made a copy using a copy machine in the

Clerk's Office.

15.     These procedures allowed Courthouse News to report on the majority of petitions on the same day they were filed with the Harris County Civil District Courts, a practice that was consistent with other major state and federal courts in Texas and elsewhere.  Indeed, at the United States District Court for the Southern District of Texas and at all other Texas federal district courts, same-day access to new complaints is the norm, regardless of whether those complaints have been fully docketed or posted online.  State district courts in Dallas, Austin, Fort Worth, and Beaumont also ensure reporters who visit those courts every day have same-day access to new petitions.

**C.    Recent Changes To Access Procedures**

16.     In October 2008, officials at the Clerk's Office instituted a policy change that significantly reduced Mr. Langford's ability to access new petitions on a timely basis.  Under the new policy, Mr. Langford was no longer allowed to review the newly filed petitions themselves.  Instead, he was asked to submit a list of the petitions he wished to review, and staffers in the clerk's office would make *photocopies* of those petitions for Mr. Langford to look at, regardless of whether he needed his own personal copy.  At the same time, the Clerk's Office discontinued its practice of holding newly filed petitions at the intake area until the end of the day.  As a result, Mr. Langford began seeing only slightly more than half of the new petitions he requested on the same day they were filed, with the remaining petitions not made available for media review until a day or more after filing.

17.     In early March 2009, Defendant McCoy informed Mr. Langford that even this reduced level of access would be discontinued, and that beginning on March 16, Mr. Langford's exclusive means of accessing new petitions would be through the "eDocs" section of the District

Clerk's web site.  While docket information about new petitions is posted to another section of that web site almost as soon as a petition is filed, the petitions themselves are not usually published on eDocs until two to five court days after filing, with typical delays in the three to four day range (actual delays are often longer due to intervening weekends).  Although there is no charge to view documents on eDocs, copies currently cost $1 per page.

18.     Although the information published by the District Clerk on its web site constitutes only a subset of the much broader array of information offered by Courthouse News to its subscribers, the Clerk's web site is nonetheless a competitive news product.  By publishing docket information about new petitions and the petitions themselves before Courthouse News is even allowed to see them, Defendants are effectively "scooping" Courthouse News and any other competing news service.  In short, Defendants are acting no differently than a private publisher, but enjoy an unfair advantage by virtue of their ability to delay access to new court filings to competing information providers such Courthouse News.

19.     Given the lengthy delays in access to new petitions that would result from being required to view new petitions only on eDocs, as well as the prospect of being denied access to new petitions until *after* those petitions had already been published on the District Clerk's web site, Courthouse News expressed concern about the planned changes.  In response, Courthouse News was told it could continue to request paper copies of new petitions, but there would be no guarantee those requests would be accommodated.

D.     **Efforts To Resolve Access Issues**

20.     On March 13, 2009, Courthouse News' counsel and one of its editors, Madison Venza, met with Defendants Jackson and McCoy to discuss Courthouse News' concerns about the planned changes.  Defendants agreed to continue the then-existing, but still limited, media

access procedures for two weeks while the parties continued to discuss the matter, and a follow-up meeting was set for March 27.

21.     In an attempt to put constructive solutions on the table prior to the March 27 meeting, Courthouse News sent Defendant Jackson a letter on March 25 proposing that the court simply make all of the new petitions available for media review in a central place for a 45-minute period at the end of the day on which those petitions were filed, after which time they could be sent along for further processing, scanning, and posting to eDocs.  Such procedures, commonly used in other courts, do not require that a reporter be allowed behind the counter and enable reporters to review the new cases without imposing any appreciable burden on court staff.  And because media review would be limited to 45 minutes at the end of the day the petitions were filed, Courthouse News' proposal would have had only a *de minimis* impact on the processing of petitions.

22.     At the March 27 follow-up meeting, Courthouse News was informed that the behind-the-counter access that had been traditional at the District Clerk's Office for nearly ten years would not be reinstated due to "security concerns," despite the fact that there has never been an identified security issue relating to news media access to new filings.  As to the alternate proposals offered in Courthouse News' March 25 letter, which would not have required Courthouse News to go behind the counter, Mr. Jackson objected on the grounds that: (1) he did not want to allow access to original filings until they were "certified" through some unspecified administrative procedure; and (2) allowing Mr. Langford to see the original paper versions of the filings would slow down their processing.  Defendants nevertheless indicated that the Clerk's Office would try to make photocopies of new petitions for Mr. Langford to review, with the first ten petitions being provided free of charge and subsequent petitions provided at a rate of $1 per

page (in effect charging Courthouse News for access, since it would have to pay for a copy of a petition before it could even look at it).  As to those petitions the District Clerk could not, for whatever reason, copy for Mr. Langford on a same-day basis, Courthouse News was told it would have to wait until those petitions were published on eDocs.

23.     Unfortunately, Mr. Langford's ability to obtain timely access to new petitions has continued to deteriorate.  Since March 30, Mr. Langford has only been able to see an average of five or six new petitions the same day they are filed – roughly 5-10% of the new civil filings. While a few of the remaining petitions are provided to Mr. Langford in paper form, it can take up to seven court days for him to receive them.  As to the remaining petitions, *i.e.* most of them, he is not permitted to see them until after they have been posted to eDocs – which, as noted above, is usually delayed by two to five court days.  And of course, by the time Mr. Langford is able to see the new petitions, the Clerk's Office has already effectively scooped Courthouse News by publishing information about those petitions on its web site.

24.     In an effort to discuss the situation further, Courthouse News' counsel attempted to reach Mr. Jackson, but he was unavailable.  E-mail exchanges and a telephone conference with Mr. McCoy also proved unsuccessful in resolving the problem.  In a final attempt to resolve the matter short of litigation, Courthouse News' editor wrote to Mr. Jackson on May 29, 2009, but he has not responded.

25.     Courthouse News has diligently attempted to work cooperatively with Defendants to ensure continued same-day access to new court filings since procedures began to change in October 2008.  Despite an initial showing of willingness to listen to Courthouse News' concerns, Defendants have ultimately rebuffed these attempts, even though Courthouse News' offer of compromise solutions proposed only minimal changes to the procedures of the District Clerk's

Office.   Defendants' pattern of inaction has left Courthouse News with no choice but to seek immediate injunctive relief in this Court.  Unless enjoined by the Court, Defendants will continue to deny Courthouse News access to newly-filed petitions on a timely basis, in effect sealing those documents for an appreciable period of time after filing and using the delay in access to achieve an unfair advantage with respect to the publication of information about new cases on the District Clerk's revenue-generating web site.  All of this poses an immediate and substantial threat to Courthouse News' constitutional, common law, and statutory rights and those of its subscribers, as well as Courthouse News' competitive standing in the market for dissemination of information about new civil litigation in Texas.

**V.   <u>COUNT ONE</u>**

**(Violation of U.S. Const. Amend. I and 42 U.S.C. § 1983)**

**(Against All Defendants)**

26.   Courthouse News incorporates the allegations of Paragraphs 1-25 herein.

27.   Defendants' actions under color of state law, including without limitation their denial of timely, same-day access to new civil court petitions and Defendants' elevation of themselves above the news media to a favored position with respect to the publication of public court records, deprive Courthouse News and by extension its subscribers of their right of access to public court records secured by the First Amendment to the U.S. Constitution.

28.   Except in the case of particularly time-sensitive filings (*e.g.*, a petition including a request for a TRO), there is no compelling or overriding interest or other justification sufficient to overcome Defendants' actions in violation of the First Amendment.  And even if an overriding interest did exist, there are less restrictive means of achieving any such interest, and the procedures implemented by Defendants are not narrowly tailored to serve any overriding interest.

30.     Courthouse News has no adequate and speedy remedy at law to prevent or redress Defendants' unconstitutional actions, and will suffer irreparable harm as a result of Defendants' violation of its First Amendment rights.  Courthouse News is therefore entitled to declaratory and both preliminary and permanent injunctive relief to prevent further deprivation of the First Amendment rights guaranteed to it and its subscribers and preserve the relevant status quo – *i.e.*, the last uncontested status preceding the current controversy.

## VI.     COUNT TWO

### (Violation of Federal Common Law and 42 U.S.C. § 1983)

### (Against All Defendants)

31.     Courthouse News incorporates the allegations of Paragraphs 1-30.

32.     Defendants' actions under color of state law, including without limitation their denial of timely, same-day access to new civil court petitions and Defendants' elevation of themselves above the news media to a favored position with respect to the publication of public court records, deprive Courthouse News and their subscribers of the presumption of access to court records guaranteed by the federal common law.

33.     Except in the case of particularly time-sensitive filings, there is no legitimate justification for withholding new petitions that is sufficient to overcome the common law right of Courthouse News and its subscribers to be able to timely review new case-initiating documents.

34.     Courthouse News has no adequate and speedy remedy at law to prevent or redress Defendants' unconstitutional actions, and will suffer irreparable harm as a result of Defendants' violation of its common law right of access.  This is so, in part, because prolonged delays in access not only diminish the value of Courthouse News' reports to its subscribers, but are also likely to result in a loss of subscribers or, at the very least, a perception among subscribers that

Courthouse News' news reporting products are less useful and valuable than they have been in the past, leading to a loss of goodwill. Courthouse News is therefore entitled to declaratory and both preliminary and permanent injunctive relief to prevent further deprivation of the rights guaranteed to it and its subscribers under the common law and preserve the relevant status quo – *i.e.*, the last uncontested status preceding the current controversy.

## VII.   COUNT THREE

### (Violation of Texas Const. Art. I, Sec. 8)

### (Against All Defendants)

35.    Courthouse News incorporates the allegations of Paragraphs 1-34 herein.

36.    Defendants' actions under color of state law, including without limitation their denial of timely, same-day access to new civil court petitions and Defendants' elevation of themselves above the news media to a favored position with respect to the publication of public court records, deprive Courthouse News and by extension its subscribers of their right of access to public court records secured by the free press provision of Article I, Section 8 of the Texas Constitution.

37.    Except in the case of particularly time-sensitive filings, there is no compelling or overriding interest or other justification sufficient to overcome Defendants' actions in violation of the Texas Constitution. And even if an overriding interest did exist, there are less restrictive means of achieving any such interest, and the procedures implemented by Defendants are not narrowly tailored to serve any overriding interest.

38.    Courthouse News has no adequate and speedy remedy at law to prevent or redress Defendants' unconstitutional actions, and will suffer irreparable harm as a result of Defendants' violation of its rights under Article I, Section 8 of the Texas Constitution. Courthouse News is

therefore entitled to declaratory and both preliminary and permanent injunctive relief to prevent further deprivation of the rights guaranteed to it and its subscribers under the Texas Constitution and preserve the relevant status quo – *i.e.*, the last uncontested status preceding the current controversy.

## VIII.   COUNT FOUR

### (Violation of Tex. R. Civ. P. 76a)

### (Against All Defendants)

39.     Courthouse News incorporates the allegations of Paragraphs 1-38.

40.     Defendants' actions, including without limitation their denial of timely, same-day access to new civil court petitions, violates state law, specifically Rule 76a of the Texas Rules of Civil Procedure, because new civil petitions are "court records" as defined by Rule 76 and, thus, are presumed open to the public, and Defendants have not followed the strict requirements of Rule 76a in order to properly deny access to court records.

41.     Except in the case of particularly time-sensitive filings, there is no legitimate justification recognized under Texas law for withholding new petitions from public access, nor can Defendants assert a proper basis for overcoming the presumption of public access set forth in Tex. R. Civ. P. 76a.

42.     Courthouse News has no adequate and speedy remedy at law to prevent or redress Defendants' violations of state law, and will suffer irreparable harm as a result of Defendants' violation of its right of access.  This is so, in part, because prolonged delays in access not only diminish the value of Courthouse News' reports to its subscribers, but are also likely to result in a loss of subscribers or, at the very least, a perception among subscribers that Courthouse News' news reporting products are less useful and valuable than they have been in the past, leading to a

loss of goodwill.  Courthouse News is therefore entitled to declaratory and both preliminary and permanent injunctive relief to prevent further deprivation of the rights guaranteed to it and its subscribers under state law and preserve the relevant status quo – *i.e.*, the last uncontested status preceding the current controversy.

## IX.   COUNT FIVE

### (Violation of Texas Common Law)

### (Against All Defendants)

43.     Courthouse News incorporates the allegations of Paragraphs 1-42.

44.     Defendants' actions under color of state law, including without limitation their denial of timely, same-day access to new civil court petitions and Defendants' elevation of themselves above the news media to a favored position with respect to the publication of public court records, deprive Courthouse News and their subscribers of the presumption of access to court records guaranteed by Texas common law.

45.     Except in the case of particularly time-sensitive filings, there is no legitimate justification for withholding new petitions that is sufficient to overcome the common law right of Courthouse News and its subscribers to be able to timely review new case-initiating documents.

46.     Courthouse News has no adequate and speedy remedy at law to prevent or redress Defendants' unconstitutional actions, and will suffer irreparable harm as a result of Defendants' violation of its common law right of access.  This is so, in part, because prolonged delays in access not only diminish the value of Courthouse News' reports to its subscribers, but are also likely to result in a loss of subscribers or, at the very least, a perception among subscribers that Courthouse News' news reporting products are less useful and valuable than they have been in the past, leading to a loss of goodwill.  Courthouse News is therefore entitled to declaratory and

both preliminary and permanent injunctive relief to prevent further deprivation of the rights guaranteed to it and its subscribers under Texas common law and preserve the relevant status quo – *i.e.*, the last uncontested status preceding the current controversy.

## X.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Courthouse News Service prays for judgment against Defendants as follows:

A.   For preliminary and permanent injunctions against Defendants, including their agents, assistants, successors, employees, and all persons acting in concert or cooperation with them, or at their direction or under their control, prohibiting them preliminarily, during the pendency of this action, and permanently thereafter from denying Courthouse News access to new civil court petitions and other case-initiating documents on the same day they are filed, except as may be necessary in those instances where the filing party is seeking a TRO or other immediate relief or has properly filed the pleading under seal.

B.   For a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring the denial of same-day access to new civil court petitions and other case-initiating documents, except as may be necessary in those instances where the filing party is seeking a TRO or other immediate relief, as unconstitutional under the First and Fourteenth Amendments to the United States Constitution and Article I, Section 8 of the Texas Constitution, and in violation of Texas common law and Tex. R. Civ. P. 76a, for the reason that it constitutes an effective denial of access to court records.

C.   For an award of costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

D.   For all other relief the Court deems just and proper.

Dated:   June 12, 2009                    Respectfully submitted,

                                          JACKSON WALKER L.L.P.


                                          By:  /s/ John K. Edwards
                                                John K. Edwards
                                                Attorney-In-Charge
                                                Texas Bar No. 24002040
                                                S.D. I.D. No. 21645
                                                1401 McKinney, Suite 1900
                                                Houston, Texas 77010
                                                Telephone:  (713) 752-4200
                                                Facsimile:  (713) 752-4221
                                                Email:  jedwards@jw.com

OF COUNSEL:

HOLME, ROBERTS & OWEN LLP

Rachel Matteo-Boehm, *pro hac vice* pending
Texas Bar No.  00796221
Katherine Keating, *pro hac vice* pending
Laurie J. Rust, *pro hac vice* pending
560 Mission Street, Suite 2500
San Francisco, CA 94105
Telephone:  (415) 268-2000
Facsimile:  (415) 268-1999
Email: rachel.matteo-boehm@hro.com

                                          ATTORNEYS FOR PLAINTIFF
                                          COURTHOUSE NEWS SERVICE