IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| COURTHOUSE NEWS SERVICE, } | |
| } | |
| *Plaintiff*, } | |
| v. } | Civil Action No. H-09-1844 |
| } | |
| LOREN JACKSON, in his official } | |
| capacity as Harris County District Clerk, } | |
| and WES McCOY, in his official capacity } | |
| as Chief Deputy – Services for the Harris } | |
| County District Clerk's Office, } | |
| } | |
| *Defendants*. } | |

## OPINION AND ORDER OF PRELIMINARY INJUNCTION

Presently before the Court is Plaintiff Courthouse News Service's (CNS) motion for injunctive relief (Doc. 2). Upon review and consideration of this document, the responses and replies thereto, the relevant legal authority, and the testimony provided and evidence introduced at the June 25, 2009, preliminary injunction hearing, the Court finds that Plaintiff's motion should be granted.

I.      Background and Relevant Facts

On June 12, 2009, Plaintiff CNS initiated suit against Defendants Loren Jackson, in his official capacity as Harris County District Clerk, (Jackson) and Wes McCoy, in his official capacity as Chief Deputy – Services for the Harris County District Clerk's Office, (McCoy) (collectively, Defendants) for violations of the First Amendment to the United States Constitution, federal common law, the Texas Constitution, Texas common law, and Rule 76a of the Texas Rules of Civil Procedure. (Pl.'s Compl., Doc. 1).

Plaintiff is a 19-year-old nationwide legal news service for lawyers and the news media, and it has over 2,500 subscribers nationwide. (Girdner Decl., Doc. 5 Ex. 1 at ¶ 3).

Plaintiff's list of subscribers includes lawyers, law firms, and media entities, including *The Dallas Morning News*. (*Id.* at ¶ 9). Plaintiff offers various services to its subscribers including daily new litigation reports, news alerts via email, and four different print publications. (*Id.* at ¶¶ 5-7). The service allegedly affected by Defendants' actions in this case is the "Houston State Report," a daily new litigation report that includes a list of the significant civil complaints filed in Harris County District Court on that date. (*Id.* at ¶ 7).

Plaintiff claims that there is a longstanding tradition for state and federal courts around the country to provide reporters who make daily visits to these courts with access to newly filed complaints or petitions at the end of the business day on which these documents are filed. (*Id.* at ¶¶ 11-14; *see also* Girdner Decl., Doc. 5 Ex. 1-C). Specifically, Plaintiff asserts that, since it began visiting the Harris County District Court in 1999, reporters were permitted to review most new civil petitions in their original paper form on the same day that they were filed regardless of whether they had been fully processed, scanned, or posted online. (*Id.* at ¶ 15).

Until October 2008, Cameron Langford (Langford), CNS's reporter assigned to the Harris County District Court, would follow the procedure below. (Langford Decl., Doc. 5 Ex. 3 at ¶ 4). Prior to each visit, Langford would examine docket information on the new petitions using the Clerk's Office online JIMS system to determine which petitions were likely to be newsworthy. (*Id.*). He would then collect newly-filed petitions from the cashier and review them in an empty cubicle behind the intake counter. (*Id.*). If any petitions had been transferred to intake clerks for processing before Langford was able to review them, the cashiers would help him locate them. (*Id.*). While in the Clerk's Office, Langford would either take notes about or, if necessary, make photocopies of the newly-filed petitions. (*Id.*).

In October 2008, Jackson's predecessor as Harris County District Clerk began to review the protocol that permitted Langford or any non-deputized person access to secure areas behind the service counters of the Harris County District Clerk's Office. (Jackson Aff., Doc., 14 Ex. A at ¶ 3). In accordance with the Harris County Auditor's cash handling guidelines and recommendations, the Clerk's Office began to prevent access behind service counters for all non-deputized persons. (*Id.*). As a result, Langford was no longer granted behind-the-counter access. (*Id.*).

In November 2008, the Harris County District Clerk's Office began implementing new procedures that would provide the press and public with greater access to view and print case filings using its online service and that would encourage the use of electronically filed documents. (*Id.* at ¶ 4). In doing so, Harris County District Clerk Jackson hopes to provide equal access to all regardless of status. (*Id.* at ¶ 5). His goal is to make available online all electronically and paper filed petitions in civil matters except those exempted by law, local rule, or Court order, within the guidelines found in the Texas Rules of Judicial Administration. (*Id.*). In practice, most filings are available within 24 to 72 business hours of filing. (*Id.* at ¶ 6). Electronic filings are usually available within 24 business hours, while paper filings are typically available within 72 business hours. (*Id.*). Both electronic and paper filings are verified for correct cause number, proper court, accurate title of document, and proper category before they are made available to the public. (*Id.*). While electronically filed documents are posted online after the indexing and verification process, the paper filed documents are sent to Central Data Processing for digitizing into electronic form before they are posted online. (*Id.*).[1]

---

[1] At the preliminary injunction hearing, Farrah Martinez (Martinez), Director of Legal Affairs for the Harris County Clerk's Office, stated, ". . . our motto has been, since Mr. Jackson has come into office is, 'Get on line and not in line.' So, we are trying to go green. We're trying to make things more cost effective and more efficient." (Inj. Tr., Doc. 24 at 17:9-12). The Court finds it ironic that, in an effort to become more effective and efficient, it

Although the parties have attempted to resolve these issues, they have not been successful. Accordingly, Plaintiff has filed the instant motion requesting that Defendants be enjoined from denying Plaintiff timely access to new civil petitions filed in the Harris County Civil District Courts. Specifically, Plaintiff requests that it be given access on the same day the petitions are filed except where the filing party is seeking a temporary restraining order or other immediate relief or has properly filed the pleading under seal.[2] While Defendants admit that Plaintiff has a right of access to newly-filed petitions, they maintain that the new method by which the Clerk's Office is processing case initiating documents is a reasonable time, place, or manner restriction and, as such, survives First Amendment scrutiny.

II.       Legal Standard on Preliminary Injunction

A party seeking a preliminary injunction must establish the following elements by a preponderance of the evidence: (1) there is a substantial likelihood the party will prevail on the merits; (2) a substantial threat exists that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendants, and (4) the granting of the preliminary injunction will not disserve the public interest. *Karaha Bodas Co. v. Negara*, 335 F.3d 357, 363 (5th Cir. 2003); *see also Khan v. Fort Bend Indep. Sch. Dist.*, 561 F. Supp. 2d 760, 763 (S.D. Tex. 2008). A preliminary injunction is an extraordinary remedy that should not be granted unless the party seeking it has "clearly carried the burden of persuasion" on all four elements. *Lake Charles Diesel, Inc. v. General Motors Corp.*, 328 F.3d 192, 195-96

---

now takes the Harris County Clerk's Office 24 to 72 business hours to make 73% of its newly filed civil petitions available to the public. (*Id.* at 31:20-21, 51:8-12). The Court notes that 24 to 72 business hours is approximately three to five working days.

[2] Plaintiff proposes two alternatives if Defendants do not revert to their pre-October 2008 procedure. First, Plaintiff suggests that it be permitted to review the new petitions themselves for 45 minutes at the end of the day on which they are filed regardless of whether they have been verified or scanned. Second, Plaintiff proposes that Defendants scan case-initiating documents immediately on intake and allow the press to immediately access either the paper copy of the complaint or a scanned version of it on a local computer in the Clerk's Office.

(5th Cir. 2003) (quoting *Mississippi Power & Light Co. v. United Gas Pipeline Co.*, 760 F.2d 618, 621 (5th Cir. 1985)).

III.     Discussion[3]

The First Amendment to the United States Constitution prohibits any law "abridging the freedom of . . . the press." It requires a presumption of openness of both the courtroom and court files. *United States v. Valencia*, No. CRIM H-04-514 SS, 2006 WL 3707867, * 5 (S.D. Tex. Aug. 25, 2006) (citing *SEC v. Van Waeyenberghe*, 990 F.2d 845, 849-50 (5th Cir. 1993); *In re Gannett News Serv., Inc.*, 772 F.2d 113, 115-116 (5th Cir. 1985)). Courts have found that the public has a strong common law right to access judicial records and proceedings, although this right is not absolute. *Id.* at * 5 (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *Van Waeyenberghe*, 990 F.2d at 848). Public access serves important interests, such as "to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of its fairness." *Id.* (citing *Van Waeyenberghe*, 990 F.2d at 849 (quoting *Littlejohn v. BIC Corp.*, 851 F.2d 673, 682 (3d Cir. 1988)). Thus, there is a presumption in favor of public access to judicial records. *See Van Waeyenberghe*, 990 F.2d at 848.

In *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986) (*Press II*), the Supreme Court reiterated the two complementary considerations for a case dealing with a First Amendment right of access claim in a criminal proceeding. First, because a "tradition of accessibility implies the favorable judgment of experiences, [the Court] has considered whether the place and process have historically been open to the press and general public." *Id.* at 8

---

[3] Plaintiff initiated suit for violations of the First Amendment to the United States Constitution, federal common law, the Texas Constitution, Texas common law, and Rule 76a of the Texas Rules of Civil Procedure. However, the Court notes that, because Plaintiff has demonstrated a likelihood of success on the merits of its First Amendment claim, it need not address the merits of the remaining four claims.

(internal citations and quotations omitted).  Second, the Court has considered whether public access plays a "significant positive role in the functioning of the particular process in question." *Id.* (citation omitted).  Once the right to access attaches, the presumption of openness can only be overcome by an "overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest."  *United States v. Edwards*, 823 F.2d 111, 115 (5th Cir. 1987) (citing *Press II*, 478 U.S. at 14-15).  It is the defendant's burden to overcome this presumption.  *Press II*, 478 U.S. at 14.

Although "its original inception was in the realm of criminal proceedings, the right of access has since been extended to civil proceedings because the contribution of publicity is just as important there."  *Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994) (citing *Smith v. United States Dist. Court*, 956 F.2d 647, 650 (7th Cir. 1992)).  *See also United States v. $9,041,598.68*, 976 F. Supp. 654 (S.D. Tex. 1997) ("Many courts have held that the public enjoys a First Amendment right to attend civil as well as criminal proceedings, and therefore have applied similar factors to civil proceedings.").

While the parties in the instant case agree that there is a right of access to newly-filed petitions in civil cases, they disagree on whether the delay in the availability of these documents is the "functional equivalent" of an access denial and is, thus, unconstitutional.  Defendants argue that the "slight delay" in availability is a reasonable time, place, or manner restriction.  For the reasons set forth below, the Court disagrees with Defendants' contention and instead finds that the 24 to 72 hour delay in access is effectively an access denial and is, therefore, unconstitutional.

As the Seventh Circuit has stated,

[i]n light of the values which the presumption of access endeavors to promote, a necessary corollary to the presumption is that once

> found to be appropriate, access should be immediate and contemporaneous . . . [t]he newsworthiness of a particular story is often fleeting. To delay or postpone disclosure undermines the benefit of public scrutiny and may have the same result as complete suppression . . . [E]ach passing day may constitute a separate and cognizable infringement of the First Amendment.

*Grove Fresh*, 24 F.3d at 897 (internal citations and quotations omitted).  *See also In re Charlotte Observer*, 882 F.2d 850, 856 (4th Cir. 1989) (finding that magistrate's closure order "unduly minimizes, if it does not entirely overlook, the value of 'openness' itself, a value which is threatened whenever immediate access to ongoing proceedings is denied, whatever provision is made for later public disclosure.").

Defendants attempt to analogize the 24 to 72 hour delay in access in this case to the district court's refusal to release transcripts of closed proceedings prior to the jury verdict in *Edwards*.  In *Edwards*, the Fifth Circuit held that the district court did not err in its decision because it reasonably restricted access given the paramount interest in maintaining an impartial jury.  *Edwards*, 823 F.2d at 119.  The Fifth Circuit went on to state that the trial court should avoid unnecessary delay in releasing the record of the closed proceedings following the trial.  *Id.*  The Court is unpersuaded by Defendants' argument and finds that the delay in access to the newly-filed petitions in this case is not a reasonable limitation on access. Defendants' administrative goal of getting online and not in line fails to rise to the level of significance that a trial court's interest in maintaining an impartial jury does.  Assuming, *arguendo*, that Defendants have an overriding interest, the Court finds that they have failed to demonstrate that the 24 to 72 hour delay in access is narrowly tailored to serve such an interest and that no less restrictive means of achieving that interest exists.  Accordingly, the Court finds that Plaintiff has established there is a substantial likelihood it will prevail on the merits.

It is well established that a violation of a party's constitutional rights constitutes irreparable harm as a matter of law.  *See, e.g., Elrod v. Burns*, 427 U.S. 347, 373-74 (1976); *Deerfield Medical Center v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981).  A denial of First Amendment freedoms, even for a short period of time, constitutes irreparable injury.  *New York Times Co. v. United States*, 403 U.S. 713 (1971).[4]

The threatened injury to Plaintiff outweighs any damage the injunction could cause Defendants.  Plaintiff will be denied its First Amendment right of access to new case-initiating documents unless the Court issues this preliminary injunction, while Defendants have alterative, constitutional ways to achieve their goals and address their administrative concerns.[5]

It is clearly in the public interest to enjoin Defendants' conduct.  There is an important First Amendment interest in providing timely access to new case-initiating documents.  Defendants attempt to argue that providing Plaintiff with same-day access interferes with their important objective of "getting online and not in line."  The Court acknowledges that Defendants' goal is also in the public interest.  However, as Plaintiff argues, same-day access and online access are not mutually exclusive.  Defendants may provide Plaintiff with same-day access to newly-filed petitions while working in furtherance of their goal to make documents available online.

IV.     Conclusion

Accordingly, it is hereby ORDERED that Plaintiff CNS's motion for injunctive relief is GRANTED.  It is further ORDERED that Plaintiff CNS's employee assigned to the

---

[4] The Court notes that Plaintiff also argues that prolonged delays in access will diminish the value of its reports to its subscribers, leading to a loss of goodwill which is widely recognized as an injury incapable of ascertainment in monetary terms.  The Court need not address this contention or Defendants' objections to it as the Court concludes that Plaintiff has suffered an irreparable injury in the form of a First Amendment violation.

[5] *See, e.g.*, the alternatives described in n. 2 of this Opinion and Order.

Harris County District Court be given access on the same day the petitions are filed except where the filing party is seeking a temporary restraining order or other immediate relief or has properly filed the pleading under seal.

It is further ORDERED that, pursuant to Fed. R. Civ. P. 65(c), Plaintiff CNS shall file with the Clerk of the Court a nominal bond of $1,000.00 as security.

It is further ORDERED that the case be referred to Magistrate Judge, the Honorable, Frances H. Stacy to be scheduled for trial.

SIGNED at Houston, Texas, this 20th day of July, 2009.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE